# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 18, 2007

Charles R. Fulbruge III
Clerk

No. 05-21034

ALMA ROSA CASTRO,
Individually and as Representative of
the Estate of Melvin Geovanny Romero Sagusteme,
Also Known as Melvin Alejandro Romero, Also Known as Melvin Romero,
and as Next Friend of Jennifer Johanna Romero Castro, a Minor;
ENRIQUE OSCAR ROMERO; CANDIDA ROSA SAGUSTEME,

Plaintiffs-Appellants,

v.

MATTHEW W. MCCORD,
Individually and in His Official Capacity;
CONSTABLE JACK ABERCIA,
Individually and in His Official Capacity;
HARRIS COUNTY, TEXAS,

Defendants-Appellees.

Appeals from the United States District Court
for the Southern District of Texas
No. 4:04-CV-1612

No. 05-21034

Before JONES, Chief Judge, REAVLEY and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Family members of Melvin Romero (the "plaintiffs") appeal a jury verdict in favor of officer Matthew McCord, the judgment as a matter of law ("j.m.l.") in favor of Constable Jack Abercia and Harris County, and the ruling that plaintiff Alma Castro lacks standing. Finding no error, we affirm.

I.

McCord, an on-duty licensed police officer employed as a deputy constable for Harris County, stopped Romero's car, performed a pat-down search of Romero, and felt a gun in his pocket. Backing away while drawing his service weapon, McCord repeatedly instructed Romero not to move, but Romero instead put his hand into the pocket with the gun. McCord shot three times, killing Romero. At the time of the shooting, McCord had completed all state-mandated basic police training. He was not disciplined.

II.

Castro, Romero, and Candida Sagusteme sued McCord, Harris County, and Abercia under 42 U.S.C. § 1983 and the Fourth Amendment and urged state law claims including, inter alia, assault, battery, and wrongful death. After plaintiffs had presented their case, the court granted j.m.l. for Harris County and Abercia. It found that plaintiffs (1) had not shown deliberate indifference on the part of Harris County or Abercia that would subject them to liability for a failure to train or supervise McCord; (2) had failed to demonstrate that Harris

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

County or Abercia had established an official or unofficial policy that caused the shooting; (3) had not established a link between Abercia's decision to hire McCord and the injury; (4) had failed to show that Abercia is a policymaker for the county; and (5) had not presented evidence that could establish a causal connection between the county or Abercia and McCord's actions that would make the county or Abercia liable under state law.

The court dismissed Castro for lack of standing because it found that she was never formally or informally married to Romero. It also dismissed Enrique Romero as a party because he had failed, in contravention of court orders, to appear or participate in any court proceedings and because plaintiffs had presented no evidence of damages suffered by Enrique Romero. The jury answered interrogatories finding that McCord had violated Romero's right to be free from excessive force but that his use of deadly force was objectively reasonable in light of the facts and circumstances confronting him at the time he acted.

### III.

Because of inadequate briefing, plaintiffs have waived their appeal with respect to the jury verdict, Castro's standing, the state law claims, and certain of the § 1983 claims. They have also failed to establish that Abercia or Harris County is liable under the remaining § 1983 claims.

### A.

"A defendant waives an issue if he fails to adequately brief it." United States v. Martinez, 263 F.3d 436, 438 (5th Cir. 2001). "[T]his court requires arguments to be briefed to be preserved and issues not adequately briefed are deemed abandoned . . . ." Regmi v. Gonzalez, 157 F. App'x 675, 676 (5th Cir. 2005) (citing Yohey v. Collins, 985 F.2d 222, 224-25 (5th Cir. 1993)) Though pro se litigants' briefs are liberally construed so as to avoid waiver of issues, the in-

dulgence for parties represented by counsel is necessarily narrower. See Yohey, 985 F.2d at 225. We will decline to address an issue where an argument lacks citation to authority or references to the record.[1] Failure to include an argument in the issue statement or body of the brief may also constitute waiver.[2]

1.

Plaintiffs' brief specifies two items in the "Issues" section: "Whether the trial court erred in granting Judgment as a Matter of Law for defendants Harris County and Constable Jack Abercia on all of plaintiffs [sic] claims and against plaintiff Alma Rosa Castro as to all defendants due to lack of standing." There is no mention of a challenge to the verdict in favor of McCord. In the section of the brief discussing the j.m.l., plaintiffs seem to challenge the jury's finding that McCord is entitled to qualified immunity, but the exact scope of the argument is murky. In the final paragraph of the argument section, Plaintiffs appear to argue that the interrogatories sent to the jury were improper, but they provide no explanation beyond the assertion.

Finally, in the brief's penultimate paragraph, plaintiffs request that this court vacate the jury's finding that McCord had qualified immunity and "confirm" the finding that McCord used excessive force. They also request "that all findings of fact and conclusions of law be vacated or in the alternative those inconsistent with this brief be vacated." The mere request for relief in the concluding section of an appellate brief does not constitute a supported argument or adequate briefing, nor does it preserve the issue for review, so the issue is

---

[1] United States v. Upton, 91 F.3d 677, 684 n.10 (5th Cir. 1996) (citing United States v. Ballard, 779 F.2d 287, 295 (5th Cir. 1986)); L&A Contracting Co. v. S. Concrete Servs., 17 F.3d 106, 113 (5th Cir. 1994) (waiver for failing to cite authority); United States v. Beaumont, 972 F.2d 553, 563 (5th Cir. 1992) (failure to argue the issue adequately).

[2] FED. R. APP. P. 28(a); State v. Thames, 214 F.3d 608, 611 n.3 (5th Cir. 2000) (waiver for failure to include arguments in statement of issue or body of brief).

waived.

2.

Plaintiffs' brief is wholly inadequate on the issue of Castro's standing. That issue is mentioned in three places in the briefSSfirst in the designation of the issues, second in the statement of facts, and finally in the prayer for relief. Assuming, arguendo, that the facts section is an appropriate place to make an argument, plaintiffs do not do so. Their entire "argument" is as follows: "Just prior to being killed by Deputy McCord Melvin had a child, Jennifer Johanna Romero, three years old at time of trial, through plaintiff/appellant Alma Rosa Castro. Melvin lived with Alma at the time of his death," so "Alma Rosa Castro was properly in this suit as next friend of her and Melvin's daughter Jennifer Johanna Romero and she request [sic] that she should be reinstated as a plaintiff against all defendants." There is no citation to relevant case or statutory law, nor is there an argument going to Romero's paternity of Jennifer Romero.[3] As we have said, the mere request for relief in the concluding section of an appellate brief does not constitute a supported argument, nor does it preserve the issue for review. Accordingly, this argument is waived.

---

[3] For Castro to have succeeded on this issue, she would have had to prove her marriage to Romero or some act on his part acknowledging paternity. See TEX. FAM. CODE §§ 101.24, 160.204. She does not present any argument supporting the existence of her marriage to Romero, thereby waiving the argument as to her marriage.

The only other option is some acknowledgment on the part of Romero of his paternity. The record is lacking in any such showing. The birth certificate is the only evidence in the record indicating Romero as the father, but that is not enough, because Castro admits that Romero did not consent to his name being on the form. See Yavapai-Apache Tribe v. Mejia, 906 S.W.2d 152, 175 n.15 (Tex. App.SSHouston [14th Dist.] 1995, no writ).

Additionally, paternity can be proven where the man continuously resides with the child for two years and represents that he is the father. TEX. FAM. CODE. § 160.204(a)(5). There has been no showing of that in this case, and Romero died only five days after the child's birth. Finally, even if Castro was improperly dismissed, there is no cause of action available because of the district court's and this court's ruling on the other issues.

3.

Plaintiffs waive the question of Harris County's and Abercia's § 1983 liability for failing to train or supervise McCord. The totality of the argument on this point consists of the following: "Constable Abercia is liable as Abercia (1) failed to train or supervise the officers involved, (2) there was a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights, and (3) deliberate indifference to the plaintiff's constitutional rights."[4] Although these are the elements that constitute what a plaintiff must show to establish liability for failure to train or supervise,[5] this statement does not constitute an argument. Assertion is not a substitute for argument. It is not enough to assert the outcome of a contested issue, even where, as here, the appellate court reviews the judgment de novo.[6]

4.

The district court held that although plaintiffs presented evidence of various juvenile run-ins with the law, they did not demonstrate a causal link between McCord's hiring and the shooting. On appeal, although plaintiffs make scattered references to McCord's juvenile record and military discipline record,

---

[4] To the extent that plaintiffs make an argument on this point, it appears to relate to the failure to retrain McCord following a 1999 shooting incident. Once again, however, plaintiffs fail to argue that the failure to retrain was causally linked to Romero's death. Plaintiffs also have not overcome the fact that a pattern of violations must be established to satisfy the deliberate indifference prongs. Estate of Davis ex rel. McCully v. City of N. Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005).

[5] To establish liability under § 1983 for failure to train or supervise, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Id. (quoting Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir. 1998)).

[6] See Frazier v. Garrison Indep. Sch. Dist., 980 F.2d 1514, 1527 (5th Cir. 1993) ("For an appellate court to perform its role requires at least a minimal reasoned attack.").

they make no argument as to how those facts relate to the issue of a causal link. They have failed to argue this issue adequately and have waived it on appeal.

5.

The district court held that plaintiffs had failed to demonstrate that Abercia was a policymaker for Harris County such that his actions could subject the county to liability. Before this court, plaintiffs assert that "Precinct 1 Constable Abercia testified that he was a policymaker" and that "[a]n admitted policy maker, such as Constable Abercia, can make Harris County liable." There are no citations to authority indicating that constables are policymakers, as required by L&A Contracting, 17 F.3d at 113. This failure to cite authority or the record is not surprising in light of the district court's recognition of our caselaw that indicates that, as a matter of law, constables are not policymakers.[7] Accordingly, plaintiffs have waived this issue.

6.

The district court dismissed the state law claims because plaintiffs had failed to demonstrate a connection between McCord's actions and Abercia or Harris County that would subject the county to liability. In their brief on appeal, plaintiffs do not even mention the state law claims, so they have waived them.

B.

The only issue plaintiffs did not waive is the allegation that McCord acted

---

[7] See, e.g., Rhode v. Denson, 776 F.2d 107, 108 (5th Cir. 1985) ("We are unpersuaded that a constable of a Texas county precinct occupies a relationship to the county such that his edicts or acts may fairly be said to represent official county policy"). For this reason, Abercia's tentative assertion of some policymaking authority is not enough to establish that he was a policymaker.

pursuant to a policy or custom that would give rise to liability under § 1983. We review a j.m.l. de novo and apply the same legal standard as did the district court. Anthony v. Chevron USA, Inc., 284 F.3d 578, 583 (5th Cir. 2002). A district court properly enters j.m.l. where "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue." FED. R. CIV. P. 50(a). To survive a rule 50(a) motion, the non-moving party must establish a conflict in the substantial evidence on each essential element of their claim such that a jury would not "ultimately rest its verdict on mere speculation and conjecture." Anthony, 284 F.3d at 583. In making this determination, the court considers the evidence in the light most favorable to the non-moving party. Id.

Plaintiffs allege that McCord improperly patted down Romero, did not call for a Spanish-speaking officer, did not take cover behind a nearby pole, shot Romero before a threat existed, and planted a "throw down" gun to cover up the shooting. They insinuate that these actions were in accordance with the accepted custom or policy of Harris County. The only evidence offered to establish that that was custom or policy is Abercia's failure to discipline or retrain McCord after the shooting.

Under § 1983, to recover from a governmental entity based on the theory of official policy or custom, a plaintiff must demonstrate "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." Pineda, 291 F.3d 325, 328 (5th Cir. 2002) (citing Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001)).

The first prong, the existence of a custom or policy, can be established in two ways. First, it can be shown by a policy statement, regulation, or official position adopted by policymakers that resulted in the plaintiff's injury. Id. Although plaintiffs claim Abercia was a policymaker, they have waived that claim

8

by their inadequate briefing, as we have said.  Moreover, even if they had made the argument, as a matter of law a constable is not a policymaker.

Rather, plaintiffs rely on the second method, which requires showing

[a] persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.  Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.  Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy . . . .

Id. (citing Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).

Plaintiffs did not establish a "persistent, widespread practice" of shootings by Harris County officers.  Abercia testified to three shooting deaths, including Romero's, by the thirty-four patrol officers in the five years preceding trial.[8] Further, even if it is assumed, arguendo, that plaintiffs satisfied the first two prongs by establishing the existence of a custom that a policymaker knew about, they failed to show, and do not even attempt to show, that the custom was the "moving force" behind the constitutional violation.[9]

Finally, to establish the existence of policy or custom, plaintiffs allege that the post-shooting conduct of Abercia and Harris County constituted "ratification" of McCord's conduct.  They rely exclusively on Grandstaff v. City of Borger, 767

---

[8] Abercia also testified that the population of Precinct 1 was about 700,000.

[9] The closest plaintiffs come to alleging that the custom was the moving force is two sentences, without record citations or supporting caselaw, in a paragraph on the existence of policy or custom: "Here Precinct 1 deputy constable [sic] blasted Melvin Romero with three 40 caliber hollow point bullets after employing techniques that are bound to result in death eventually as Lt. Clark testified.  An obvious throw down weapon was present and Constable Abercia and Harris County investigators looked the other way."  Plaintiffs do not specify which techniques or which statements of Clark's they are referring to, nor do they include any analysis or precedent showing that these unnamed techniques satisfy the moving force prong of the analysis.

F.2d 161 (5th Cir. 1985), to support that argument.

Grandstaff, however, has been limited to its unique facts.[10] Coon included a description of Grandstaff, whose facts are plainly distinguishable from those here:

> Grandstaff, however, does not stand for the broad proposition that if a policymaker defends his subordinates and if those subordinates are later found to have broken the law, then the illegal behavior can be assumed to have resulted from an official policy. Rather, Grandstaff affirmed a judgment against a Texas city on a highly peculiar set of facts: in response to a minor traffic violation, three patrol cars engaged in a high speed chase during which they fired wildly at the suspected misdemeanant; the object of this chase took refuge on an innocent person's ranch, where the entire night shift of the city police force converged and proceeded to direct hails of gunfire at anything that moved; although nobody except the police was ever shown to have fired a shot, the innocent rancher was killed when the police shot him in the back as he was emerging from his own vehicle; after this "incompetent and catastrophic performance," which involved a whole series of abusive acts, the officers' supervisors "denied their failures and concerned themselves only with unworthy, if not despicable, means to avoid legal liability."

Coon, 780 F.2d at 1161 (internal citations omitted). The differences between the facts of Grandstaff and those of the present case are obviousSSHere there was a single officer firing on a defendant reaching, against instructions, into his pocket allegedly for a gun, as distinguished from "the entire night shift" directing "hails of gunfire" at someone accused of a minor traffic violation, and killing an innocent bystander.

Perhaps even more fatal to plaintiffs' argument is that they base their entire case on the testimony of one expert witness, Lieutenant Roger Clark. More is required to establish liability under § 1983:

---

[10] See Coon v. Ledbetter, 780 F.2d 1158, 1161 (5th Cir. 1986) ("The Grandstaff panel emphasized the extraordinary facts of the case, and its analysis can be applied only to equally extreme factual situations.").

[W]e have emphasized that, when seeking to prove a municipality's malevolent motive, plaintiffs must introduce more evidence than merely the opinion of an expert witness. In Stokes v. Bullins, 844 F.2d 269 (5th Cir. 1988), the district court relied primarily on the testimony of a single expert witness in holding that the municipality violated § 1983. We disagreed, remarking that "an expert's opinion should not be alone sufficient to establish constitutional 'fault' by a municipality in a case of alleged omissions, where no facts support the inference that the town's motives were contrary to constitutional standards." Id. at 275.

Snyder v. Trepagnier, 142 F.3d 791, 799 (5th Cir. 1998). Without more, plaintiffs cannot rely on Clark's testimony to demonstrate that Harris County's post-incident actions constituted a malevolent policy.

The judgment is AFFIRMED.